1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AUBREY V. TAYLOR,

       Plaintiff,

  v.

ERIC TUNG, *et al.*,

       Defendants.

CASE NO. C19-0234-TSZ-MAT

REPORT AND RECOMMENDATION

<u>INTRODUCTION AND SUMMARY CONCLUSION</u>

This is a civil rights action proceeding under 42 U.S.C. § 1983. Plaintiff Aubrey Taylor is currently confined at the United States Penitentiary in Atwater, California where he is serving a 276 month sentence on federal sex trafficking charges.[1] Plaintiff filed the instant action while confined at the Federal Detention Center in SeaTac, Washington where he was awaiting trial on the federal charges. Plaintiff alleges in this action that City of Kent Police Officer Eric Tung used excessive force in effectuating his arrest in June 2016. Plaintiff identifies Officer Tung, the City of Kent, and the Kent Police Department as defendants in his amended complaint, the operative

[1] *See United States v. Taylor*, CR16-300-RSL, Dkt. 350.

REPORT AND RECOMMENDATION
PAGE - 1

1    pleading in this action.  He seeks an unspecified amount of damages.

2        The City of Kent and the Kent Police Department have filed a motion to dismiss this action

3    under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Officer Tung has filed a motion for

4    summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff has filed a

5    response in opposition to Officer Tung's motion for summary judgment.  Plaintiff has not opposed

6    the pending motion to dismiss.  Defendants have filed reply briefs in support of their motions.

7    Also pending before the Court at this time is plaintiff's motion for appointment of counsel which

8    defendants have opposed.  The Court, having reviewed defendants' motions, all related briefing,

9    and the balance of the record, concludes that defendants' motions to dismiss and for summary

10   judgment should be granted, and that plaintiff's amended complaint and this action should be

11   dismissed with prejudice.  The Court also concludes that plaintiff's motion for appointment of

12   counsel should be denied.

13                                    <u>BACKGROUND</u>

14       Sergeant Eric Tung is a K-9 handler with the City of Kent Police Department.  (Dkt. 22, ¶¶

15   1, 7.)  On June 15, 2016, a number of officers, including Sergeant Tung, were asked to assist in

16   the apprehension of plaintiff Aubrey Taylor.  (*Id*., ¶ 10.)  Prior to the anticipated apprehension, a

17   briefing was conducted during which officers were advised that a federal task force was

18   investigating plaintiff for sex trafficking of minors.  (*Id*.)  Officers were told that plaintiff was

19   wanted on a federal warrant for promoting prostitution of a minor and that there was probable

20   cause to arrest him for violating a no contact order.  (*Id*.)  Officers were also told that plaintiff was

21   a documented gang member, that he had a criminal history which included drug crimes, promoting

22   prostitution, and assault, and that he had a history of running from police and presented a

23   significant flight risk.  (*Id*.)  Officers were shown a photograph of plaintiff so that they could

REPORT AND RECOMMENDATION
PAGE - 2

1   recognize him when they went to apprehend him.  (*Id*.)

2       Following the briefing, officers proceeded to the Hawthorne Suites hotel in Kent where

3   plaintiff was believed to be staying.  (*Id*., ¶ 13.)  Sergeant Tung waited a short distance away until

4   he heard over the radio that detectives had spotted plaintiff outside the hotel.  (*Id*.)  Detectives

5   described plaintiff as wearing a varsity-style jacket and carrying a large duffel bag.  (*Id*.)  Sergeant

6   Tung and other uniformed officers then drove to the hotel's parking lot where Sergeant Tung saw

7   plaintiff standing outside.  (*Id*., ¶ 14.)  Sergeant Tung parked his patrol vehicle and then approached

8   plaintiff on foot with his police dog Kato.  (*Id*., ¶ 15.)  When Sergeant Tung saw that plaintiff was

9   looking at him he yelled "Aubrey!  Get on the ground now! You are under arrest!"  (*Id*., ¶ 17.)

10      Plaintiff failed to comply with Sergeant Tung's directive and Sergeant Tung commanded

11  again that plaintiff get on the ground.  (*Id*., ¶ 18.)  Sergeant Tung warned plaintiff that if he did not

12  comply the dog would be released to apprehend him.  (*Id*.)  According to Sergeant Tung, plaintiff

13  again failed to comply and Sergeant Tung therefore released Kato and directed the dog to

14  apprehend plaintiff.  (*Id*., ¶ 20.)  Kato was trained to bite onto a suspect and hold on until ordered

15  to release.  (*Id*.)  Kato contacted plaintiff on the bottom, rear part of his jacket.  (*Id*.)  Sergeant

16  Tung followed Kato and helped take plaintiff to the ground.  (*Id*.)

17      Once on the ground Sergeant Tung ordered plaintiff to put his hands behind his back, but

18  plaintiff tensed up and resisted efforts to handcuff him.  (*Id*., ¶ 21.)  Plaintiff was yelling at Sergeant

19  Tung to get the dog off of him while Sergeant Tung repeatedly ordered plaintiff to put his hands

20  behind his back.  (*Id*.)  Another officer then arrived and helped pull plaintiff's arms behind his

21  back.  (*Id*.)  As soon as plaintiff's arms were behind his back, Sergeant Tung ordered Kato to

22  release his hold and Kato promptly obeyed.  (*Id*., ¶ 22.)  Sergeant Tung and Kato then stood by as

23  a detective and another patrol officer handcuffed plaintiff.  (*Id*.)

REPORT AND RECOMMENDATION
PAGE - 3

Plaintiff's account of his apprehension, as set forth in his amended complaint, varies somewhat from Sergeant Tung's account. Plaintiff acknowledges that he heard officers yelling at him to get on the ground because he was under arrest, though he also claims he was not sure the officers were speaking to him as he was unaware of any reason he would be under arrest. (Dkt. 9 at 3.) He asserts that as he "took his time to figure out what was going on," he observed Sergeant Tung and Kato approximately 15 to 20 yards away and heard Sergeant Tung yelling at him to comply with the officers' orders and get on the ground. (*Id*.) Plaintiff concedes that he did not immediately comply with these directives as he was "still trying to figure out what was going on." (*Id*.) Plaintiff claims that after hearing several commands to get on the ground, he finally chose to kneel down and while he was doing this Sergeant Tung deployed Kato to apprehend him. (*Id*.) Plaintiff maintains that he was already laying on the ground with his arms spread in front of him when Kato attacked him on his lower back. (*Id*.)

Once plaintiff was handcuffed, Sergeant Tung put Kato back in his patrol vehicle and called for the Fire Department to come to the scene and provide first aid to plaintiff. (*Id*.) Sergeant Tung asked plaintiff where Kato had bitten him, and plaintiff confirmed it was a single spot on his right lower back. (*Id.*, ¶ 23.) Plaintiff had several lacerations in that area with the longest being about five inches. (*Id*.) The Fire Department thereafter arrived and provided first aid. (*Id*.)

<u>DISCUSSION</u>

<u>Motion to Dismiss:  City of Kent and Kent Police Department</u>

The first motion pending before the Court is the motion of the City of Kent and the Kent Police Department to dismiss this action under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. 19) These two entities argue in their motion that plaintiff has not pleaded facts from which it could be reasonably inferred that they are liable in this civil rights action. (*Id*.)

REPORT AND RECOMMENDATION
PAGE - 4

A defendant may move for dismissal under Rule 12(b)(6) when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In considering a motion to dismiss, the Court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Barker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (citations omitted). The Court also liberally construes a *pro se* pleading. *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). However, the Court "may not supply essential elements of the claim that were not initially pled." *Pena*, 976 F.2d at 471.

To sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A local government unit or municipality can be sued as a "person" under § 1983. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978). However, a municipality cannot be held liable under § 1983 solely because it employs a tortfeasor. *Id.* A plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal "policy" or "custom" that caused his injury, and must

REPORT AND RECOMMENDATION
PAGE - 5

1    demonstrate that the municipality, through its deliberate conduct, was the "moving force" behind

2    the injury alleged.  *Board of Commissioners of Bryan County v. Brown*, 520 U.S. 397, 403 (1997)

3    (citing *Monell*, 436 U.S. at 694).

4           Plaintiff does not specifically assert any claim against the City of Kent or its Police

5    Department in his amended complaint, nor does he allege any facts in his pleading from which it

6    could be reasonably inferred that he has a viable cause of action against these entities.  (*See* Dkt.

7    9 at 3.)  And, in fact, plaintiff conceded in an earlier submission that he does not have a basis to

8    hold either the City of Kent or the Kent Police Department liable in this action in relation to his

9    Fourth Amendment claim.  (*See* Dkt. 12 at 1.)  As plaintiff has not alleged any claim upon which

10   relief may be granted against the City of Kent or the Kent Police Department, and as he concedes

11   he will be unable to do so, the pending motion to dismiss should be granted.

12                          Motion for Summary Judgment:  Sergeant Eric Tung

13          The second motion pending before the Court at this time is Sergeant Tung's motion for

14   summary judgment.  (Dkt. 21.)  Sergeant Tung argues in his motion that the force used to arrest

15   plaintiff was reasonable under the circumstances.  (*Id.*)  Plaintiff opposes Sergeant Tung's motion,

16   arguing that the force was excessive and therefore unlawful.  (Dkt. 26.)

17          Summary judgment is appropriate when a "movant shows that there is no genuine dispute

18   as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

19   56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails

20   to make a sufficient showing on an essential element of his case with respect to which he has the

21   burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The moving party bears

22   the initial burden of showing the district court "that there is an absence of evidence to support the

23   nonmoving party's case."  *Id.* at 325.  The moving party can carry its initial burden by producing

REPORT AND RECOMMENDATION
PAGE - 6

affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id*. at 585-87.

In supporting a factual position, a party must "cit[e] to particular parts of materials in the record . . .; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 585. "[T]he requirement is that there be no *genuine* issue of material fact. . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v.*

REPORT AND RECOMMENDATION
PAGE - 7

1    *Spacelabs Med. Inc*., 343 F.3d 1107, 1112 (9th Cir. 2003).

2        Plaintiff asserts in his amended complaint that Sergeant Tung used excessive force against

3    him in effectuating his arrest on June 15, 2016.  (Dkt. 9 at 3.)  All claims that law enforcement

4    officers have used excessive force in the course of an arrest must be analyzed under the Fourth

5    Amendment's reasonableness standard.  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  The

6    Supreme Court explained in *Graham* that "the 'reasonableness' inquiry in an excessive force case

7    is an objective one:  the question is whether the officers' actions are 'objectively reasonable' in

8    light of the facts and circumstances confronting them, without regard to their underlying intent or

9    motivation."  *Id*. at 397 (citation omitted).  The Court cautioned that reasonableness must be

10   assessed from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision

11   of hindsight, and must allow for the fact that "police officers are often forced to make split-second

12   judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount

13   of force that is necessary in a particular situation."  *Graham*, 490 U.S. at 397.

14       To determine whether the force allegedly used was objectively reasonable, the Court must

15   balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests

16   against the countervailing governmental interests at stake."  *Id*. at 396.  In other words, the Court

17   weighs the type and amount of force inflicted against the severity of the crime at issue, whether

18   the suspect poses an immediate threat to the safety of officers or others, whether the suspect is

19   actively resisting arrest or attempting to evade arrest by flight, and any other relevant factors.  *See*

20   *id*.; *Jackson v. City of Bremerton*, 268 F.3d 646, 651-52 (9th Cir. 2001); *Bryan v. MacPherson*,

21   630 F.3d 805, 826 (9th Cir. 2010).

22           A.    *Nature and Quality of the Intrusion*

23       In evaluating a claim of excessive force, the Court must first consider the "type and amount

REPORT AND RECOMMENDATION
PAGE - 8

of force inflicted." *Young v. County of Los Angeles*, 655 F.3d 1156, 1161 (9th Cir. 2011). Plaintiff alleges that Sergeant Tung used excessive force when he deployed his K-9 partner, Kato, to apprehend and subdue plaintiff. (Dkt. 9 at 3.) While a canine is certainly capable of inflicting serious injury, *see e.g. Miller v. Clark County*, 340 F.3d 959 (9th Cir. 2003), the record before this Court reflects that the injuries suffered by plaintiff were relatively minor as Kato bit plaintiff a single time on the lower back resulting in superficial lacerations. (*See* Dkt. 22, ¶ 23; Dkt. 24-1 at 2.) Though the lacerations apparently required medical attention, there is no evidence that the lacerations resulted in any lasting harm to plaintiff. The duration of the contact between Kato and plaintiff also appears to have been of relatively short duration and was only somewhat prolonged by plaintiff's resistance to Sergeant Tung's efforts to handcuff plaintiff once he was on the ground. (*See* Dkt. 22, ¶¶ 20, 21.) Once another officer arrived and was able to help secure plaintiff's arms, Sergeant Tung commanded Kato to release his hold and the dog promptly obeyed. (*Id*., ¶ 22.) The Court concludes that the level of force used in effectuating plaintiff's arrest was moderate.[2]

  B. *Governmental Interests*

  As noted above, the Court evaluates the government's interest in the use of force by evaluating the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officer or others, whether the suspect was actively resisting arrest or attempting to evade arrest, and any other relevant factors.

  As to the first factor, the severity of plaintiff's crime, the evidence in the record reflects that prior to plaintiff's apprehension, Sergeant Tung and the other officers involved in the

---

[2] Regardless of how the level of force is characterized, the critical inquiry is whether defendant's actions were reasonable. *See Mattos v. Agarano*, 661 F.3d 433, 443 (9th Cir. 2011) (citing *Scott v. Harris*, 550 U.S. 372, 383 (2007)).

REPORT AND RECOMMENDATION
PAGE - 9

1    operation were advised that plaintiff was under investigation by a federal task force for sex

2    trafficking of minors, and that plaintiff was wanted on a federal warrant for promoting prostitution

3    of a minor, a felony.  As the Ninth Circuit has explained, "[t]he government has an undeniable,

4    legitimate interest in apprehending criminal suspects . . . and that interest is even stronger when

5    the criminal is . . . suspected of a felony."  *See Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir.

6    2003).  The officers were also advised during the briefing that there was probable cause to arrest

7    plaintiff for violating a no-contact order.  Though such a violation is a gross misdemeanor and not

8    a felony under Washington law, it is deemed a serious offense and one which requires peace

9    officers to make an immediate arrest even without a warrant.  *See* RCW 10.31.100(2)(a), RCW

10   10.99.055, RCW 26.50.110(1), (2).

11        Plaintiff, in his response to defendant's summary judgment motion, maintains that during

12   his subsequent criminal proceedings in federal court, law enforcement officers testified that

13   plaintiff's arrest on June 15, 2016 was based on his misdemeanor violation of the no contact order

14   and not on the federal felony warrant.  (Dkt. 26 at 3.)  However, the Court must analyze the use of

15   force based on what the defendant knew at the time of plaintiff's apprehension, not on what other

16   law enforcement officers represented to the Court during a subsequent proceeding.  Plaintiff offers

17   no evidence to rebut Sergeant Tung's evidence that he understood that plaintiff was wanted on a

18   federal warrant at the time of his arrest as well as for violating a no contact order.  The first *Graham*

19   factor clearly favors defendant.

20        The second factor, whether plaintiff posed an immediate threat to the safety of the officers

21   or others, is the most important of the three specific factors identified in *Graham*.  *Bryan v.*

22   *MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (citing *Smith v. City of Hemet*, 394 F.3d 689, 702

23   (9th Cir. 2005)).  The "threat analysis must be based on objective factors and not merely 'a simple

REPORT AND RECOMMENDATION
PAGE - 10

1    statement by an officer that he fears for his safety or the safety of others.'" *Nelson v. City of Davis*,

2    685 F.3d 867, 880 (9th Cir. 2012) (quoting *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir.

3    2001)).

4          Sergeant Tung states that he and other officers were advised in advance of their

5    apprehension of plaintiff that plaintiff was a documented gang member, that plaintiff had a

6    criminal history that included drug crimes, promoting prostitution, and assault, and that he had a

7    history of running from police and presented a significant flight risk. (Dkt. 22, ¶ 10.) According

8    to Sergeant Tung, plaintiff's gang affiliation and his involvement with drugs and promoting

9    prostitution made him concerned that plaintiff might be armed and dangerous. (*Id.*, ¶ 11.) Sergeant

10   Tung states that based on his training and experience, he knew that gang members, drug dealers,

11   and pimps frequently carried guns and could be violent. (*Id.*)

12         Plaintiff asserts in his response to defendant's summary judgment motion that the

13   information provided to officers during their briefing in advance of his apprehension was incorrect.

14   (Dkt. 26 at 1.)  Plaintiff claims that he has never been arrested or investigated for any offense

15   related to firearms, that he has never been charged with running from or attempting to elude police,

16   and that he has never been known to be a threat to law enforcement. (*Id.* at 1-2.)  Plaintiff also

17   claims that his prior drug and prostitution charges were not the type of charges from which

18   Sergeant Tung could reasonably conclude that plaintiff was armed and dangerous. (*Id.*)

19         As noted above, what is relevant in this Court's analysis of the incident at issue is the

20   information Sergeant Tung had at the time of plaintiff's arrest.  Given what Sergeant Tung had

21   been told about plaintiff's background and about the pending investigation and federal warrant,

22   Sergeant Tung could reasonably conclude that plaintiff posed an immediate threat to the safety of

23   officers and to the public.  Sergeant Tung could also reasonably conclude, based on plaintiff's

REPORT AND RECOMMENDATION
PAGE - 11

1    failure to comply with repeated orders to get on the ground, that he was considering fighting or

2    fleeing.  The fact that, ultimately, no weapons were found on plaintiff, does not undermine the

3    concern that he might have been armed or that he might have chosen to flee rather than be taken

4    into custody by police.  The second *Graham* factor also weighs in defendant's favor.

5         The third *Graham* factor is weather plaintiff was actively resisting arrest or attempting to

6    evade arrest by flight.  Plaintiff claims that at the time officers approached him with their guns

7    drawn, yelling commands at him, he could not understand what they were saying or who they were

8    speaking to "due to the fact that I had no warrant's [sic] I was aware of."  (Dkt. 26 at 2.)  Plaintiff

9    claims as well that though he did see Sergeant Tung and the dog, he "never heard him say my

10   name nor did he take the time to explain why I was under arrest which is what I was trying to

11   figure out in my head while officer's [sic] yelled at me from different direction's [sic]."  (*Id*.)

12   Plaintiff goes on to say that he "made it a point" to tell Sergeant Tung following the arrest that he

13   did not hear Sergeant Tung call his name but did hear him say that plaintiff "was a bad guy and I

14   needed to get on the ground which given the command could have applied to anyone outside the

15   hotel that day."  (*Id*.)

16        Plaintiff's assertions are somewhat inconsistent.  He claims that he heard officers yelling

17   commands at him as they approached him with their guns drawn, but he also claims that he didn't

18   know who officers were speaking to.  Plaintiff's explanation of events appears to confirm that he

19   did not comply with officers' directives.  Regardless of his reason for not complying, plaintiff's

20   failure to get to the ground when directed, was sufficient to justify some use of force by officers

21   in order to effectuate his arrest.  This factor also favors defendant.  In sum, all three of the *Graham*

22   factors favor defendant, some more heavily than others.

23   / / /

REPORT AND RECOMMENDATION
PAGE - 12

C.      *Reasonableness of Force Used*

The Court now turns to the dispositive question of whether the force applied was reasonably necessary under the circumstances.  Viewing the evidence in plaintiff's favor, but from the perspective of a reasonable officer on the scene, this Court concludes that the level of force employed was objectively reasonable under the circumstances.  Based on the information Sergeant Tung had been provided during the pre-apprehension briefing, and plaintiff's admitted failure to comply with repeated commands to get on the ground, his decision to release Kato to apprehend and subdue plaintiff was reasonable.  And, plaintiff's resistance to Sergeant Tung's efforts to handcuff him justified a slight delay in having Kato release plaintiff once he was on the ground.

Plaintiff claims that he has evidence demonstrating he was already laying on the ground by the time the K-9 was released to attack him, and that Sergeant Tung did not pull the K-9 off until plaintiff was handcuffed.  (Dkt. 26 at 2.)  However, plaintiff has produced no such evidence.  Plaintiff does allege in his verified complaint that he was on the ground with his hands out at the time he was attacked, but he also alleges, somewhat inconsistently, that the K-9 was released by Sergeant Tung at about the same time as plaintiff finally decided to comply with officers' commands to get to the ground.  (Dkt. 9 at 3.)  The fact that plaintiff may have decided to comply as the dog was being released does not save his claim.

The actual evidence in the record demonstrates that Sergeant Tung deployed Kato when plaintiff failed to comply with repeated commands to go to the ground and after plaintiff was warned that the dog would be released if he failed to comply.  When plaintiff did not comply, Kato was released, contacted plaintiff, and held onto him until plaintiff's arms were behind his back and Sergeant Tung commanded Kato to release his hold.  Until plaintiff complied with officers' directives, and officers had full control of plaintiff with his arms secured behind his back, plaintiff

REPORT AND RECOMMENDATION
PAGE - 13

arguably posed a threat to officers and Sergeant Tung's actions were therefore justified. Accordingly, Sergeant Tung is entitled to summary judgment with respect to plaintiff's excessive force claim.

### Motion for Appointment of Counsel

Plaintiff moves for appointment of counsel in this matter. (Dkt. 25.) He asserts in his motion that he does not have the funds or means to retain an attorney and is not sufficiently familiar with the rules of civil procedure to continue on to trial. (*Id.*)

There is no right to have counsel appointed in cases brought under 42 U.S.C. § 1983. Although the Court, under 28 U.S.C. § 1915(e)(1), can request counsel to represent a party proceeding *in forma pauperis*, the Court may do so only in exceptional circumstances. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986); *Franklin v. Murphy*, 745 F.2d 1221, 1236 (9th Cir. 1984); *Aldabe v. Aldabe*, 616 F.2d 1089 (9th Cir. 1980). A finding of exceptional circumstances requires an evaluation of both the likelihood of success on the merits and the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved. *Wilborn*, 789 F.2d at 1331.

Plaintiff's claims are not particularly complex and he has demonstrated ample ability to both articulate and argue his claims. Moreover, as this Court has now determined that the City of Kent and the Kent Police Department should be dismissed from this action based on plaintiff's failure to state any claim upon which relief may be granted, and that Sergeant Tung is entitled to summary judgment, it appears unlikely that plaintiff will succeed on the merits of his claims. In sum, plaintiff has not demonstrated that his case involves exceptional circumstances which warrant the appointment of counsel and the instant motion must therefore be denied.

/ / /

REPORT AND RECOMMENDATION
PAGE - 14

CONCLUSION

Based on the foregoing, this Court recommends that the motion to dismiss filed on behalf of the City of Kent and the Kent Police Department be granted, and that Sergeant Tung's motion for summary judgment be granted. This Court further recommends that plaintiff's amended complaint and this action be dismissed with prejudice.  Finally, this Court recommends that plaintiff's motion for appointment of counsel be denied.  A proposed Order accompanies this Report and Recommendation.

OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **September 27, 2019**.

DATED this 3rd day of September, 2019.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 15